**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

In re: Appeal of J.D. Associates  }
            }
            }  Docket No.  83-5-99 Vtec
            }
            }

Decision and Order

Appellant appealed from a decision of the Development Review Board (DRB) of the Town of Morristown granting conditional use approval to Appellee-Applicant North Country Animal League for an animal shelter facility. This appeal is on the record, as the Town has adopted the necessary procedures and the DRB applied them to this decision. Appellant is represented by Harold Stevens, Esq.; Appellee-Applicant is represented by Jeff W. Lively, Esq.; the Town is represented by Joseph S. McLean, Esq., but has not taken an active role in the briefing or argument of the merits of this appeal. Appellee-Applicant= s brief on the merits of the appeal was filed late, and has not been considered by the Court, as discussed on the record at the oral argument scheduled for January 18, 2002.

Docket No. 83-5-99 Vtec is the only one remaining of three on-the-record appeals filed with the Court from various iterations of Appellee-Applicant= s proposal to establish an animal shelter facility in Morristown. It initially proposed a facility with an outdoor dog run on the former Vartanian property. However, the third appeal, Docket No. 36-2-00, became final as having been untimely appealed, and has amended the proposal in the present to change the outdoor dog run to an indoor dog run, as contemplated by one condition in the decision on appeal in the present case.

Question 1 of the Statement of Questions, whether the proposed animal shelter qualifies as a A community facility@ under the Zoning Bylaw, was ruled on in favor of Appellee-Applicant by summary judgment in a decision issued on November 5, 2001. Question 7 of the Statement of Questions, whether the Town has standing to appear in this appeal, appears to be moot, as the Town has not taken an active role and no party moved to dismiss the Town as a party. The remaining five questions in the Statement of Questions will be addressed in turn. As established in the May 15, 2001 order on the scope and standard of review, the factual findings of the administrative body are not conclusive, but they are given great weight. The Court must determine if substantial evidence exists in the record as a whole from which the factual findings of the DRB might reasonably be inferred. In an on-the-record appeal the Court does not substitute its judgment for that of the DRB on factual matters.

Appellee-Applicant proposes to renovate and incorporate an existing building known as the Vartanian Clinic on a 3-acre parcel of land on Route 100 into an animal shelter. The animal shelter building will include administrative offices; indoor areas in which animals will be housed (> kennel= ) and exercised (> dog run= ) while at the facility; so-called > get-acquainted= areas for prospective adopters to meet and play with the animals; isolation and examination rooms; a spay/neuter facility; a food preparation area; a store for the sale of pet care items; and a community meeting room. The community meeting room and 16 additional kennel spaces are proposed for the second phase of the facility. The project proposes to place only its leachfield on the adjacent 10.1-acre Schillhamer property. The property will have 11 parking spaces including a handicapped-accessible space. At least 16 to 17 car visits are expected per day. Appellee-Applicant proposes to plant 32 trees and 40 shrubs to provide landscaping and screening, in clumps of native coniferous and deciduous trees and shrubs around the berm and building.

The shelter is designed to accommodate a maximum of 16 dogs (in the first phase) and up to 28 cats and other small animals. The kennels are proposed to be climate-controlled, with two to five vents from its air-handling system. Although the facility is now proposed with an indoor dog run, Appellant states that dogs will be walked outside on a daily basis. Although Appellant also states that the Schillhamer property may eventually be used for a dog walking path and dog obedience training ground, such a proposal is not within the scope of the present appeal, as a condition of the DRB decision requires that the Schillhamer property not be used for any use associated with the animal shelter other than for its leach field. Water supply for the building is from an on-site well.

Appellee-Applicant proposes to be open to the public from 10:00 a.m. to 5:00 p.m. five days per week; from 10:00 a.m. to 7:00 p.m. one day per week; and on Sundays from 11:00 a.m. to 3:00 p.m.

Appellant= s Farm Resort and Golf Course abuts the Schillhamer property to the north and northwest and is approximately 1,130 feet from the proposed building, but it does not adjoin the project property. The area contains residences, Appellant= s resort and golf course, a riding stable and other agricultural and residential uses. Across the road (Route 100) from the proposed building are approximately six private residences. Route 100 is a main road for the area; traffic on it varies with the time of day. Other noise comes from planes occasionally flying overhead. Only a few of the immediate neighbors currently keep dogs; noise from barking dogs is not a problem in the neighborhood.

Question 2 - Is the landscaping and screening adequate to protect adjacent uses from the proposed development?

Substantial evidence exists in the record as a whole to support the findings of the DRB that there is adequate landscaping and screening to protect adjacent uses from the proposed development, with the substantial number of trees and shrubs proposed to be planted around the building. In addition, Appellant= s property is not an adjacent use and is screened from the project property by the 10-acre Schillhamer property. Moreover, the DRB reserved to itself the right to review the operation of the facility at stated intervals and to require Appellee-Applicant to place additional screening if required.

Question 3 - Is there already adequate capacity within existing or planned community facilities to accommodate the proposed development?

Substantial evidence exists in the record as a whole to support the findings of the DRB that there is adequate capacity within existing or planned community facilities, including the schools, public library, roads[1], volunteer fire department, volunteer rescue department, recreation committee, and police department to accommodate the proposed development. The proposal will not place a burden on any of these community facilities, and is not served by municipal water or sewer.

Questions 4 and 5 - Will the development adversely affect the character of the area or result in undue noise pollution?

Substantial evidence exists in the record as a whole to support the findings of the DRB that the character of the area already may include the sound of dogs barking, and that it is only excessive or continuous barking, if clearly audible on neighboring properties, that may adversely affect the character of the area and constitute undue noise pollution. This evidence is found in the testimony and reports of the noise experts and the additional information received about noise control, the testimony of witnesses familiar with the behavior of dogs, and the site visit conducted by the DRB with dogs present. Substantial evidence exists in the record as a whole to support the findings of the DRB that, with conditions to mitigate the effects of dogs barking, including the

elimination of the outdoor dog run, the installation of fencing and an earthen berm, and the elimination of openable windows in the exterior walls of the kennel portion of the building, and requirements as to the sound insulation value of the walls and ceiling of the kennel portion of the building, the proposal will not adversely affect the character of the area.

Question 5 - Will the proposed project result in undue water or air pollution?

Substantial evidence exists in the record as a whole to support the findings of the DRB that the project will not result in undue water or air pollution if constructed and operated according to the conditions imposed by the DRB.

Question 6 - Is there adequate traffic access and circulation to accommodate the proposed project?

Substantial evidence exists in the record as a whole to support the findings of the DRB that the proposed access onto Route 100 and the layout of the proposed parking area will be adequate to accommodate the vehicle visits expected from the proposed project without any safety hazard or adverse impact on traffic on Route 100. Appellant argues that it is inappropriate as an essentially commercial use in an essentially residential area, but does not assert any lack of support in the record for this finding of the DRB.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that the decision of the DRB in this matter is upheld and Appellee-Applicant= s application is approved.

Done at Barre, Vermont, this 4th day of February, 2002.

_____
Merideth Wright
Environmental Judge

---

**Footnotes**

1. While roads are not ordinarily considered in the community facilities criterion, as they are considered in the criterion of 'traffic on roads and highways in the vicinity', the DRB considered roads as community facilities.